## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

DAQUAN L. TYLER,                          *

     Plaintiff,                          *

        v.                               *          Civil Action No. JKB-24-0487

CASEY M. CAMPBELL, et al.,                 *

     Defendants.                         *
                          ***

### MEMORANDUM OPINION

Self-represented plaintiff, Daquan L. Tyler, an inmate presently incarcerated at Roxbury Correctional Institution ("RCI") in Hagerstown, Maryland, filed the above-captioned civil rights action pursuant to 42 U.S.C. § 1983 against Casey M. Campbell, Warden of RCI; Stacey Kretzer, RCI Finance Business Office Director Supervisor; Robert L. Green, Secretary of the Department of Public Safety and Correctional Services ("DPSCS"); Wayne Hill, Commissioner of Corrections; and the State of Maryland. (ECF No. 1.) Tyler alleges that prison officials failed to timely process a payment voucher to be sent to the Circuit Court for Washington County to pay the filing fee for a petition for judicial review resulting in the petition being dismissed as untimely. (*Id.* at 6–7.) Tyler seeks monetary damages. (*Id.* at 3.)

On December 3, 2024, Defendants filed a Motion to Dismiss or, in the Alternative, for Summary Judgment, and Tyler was advised of his right to oppose the motion pursuant to *Roseboro v. Garrison,* 528 F.2d 309 (4th Cir. 1975). (ECF Nos. 10, 11.) Tyler filed a motion for extension of time to respond to Defendants' Motion as well as a Motion Requesting Pre-Trial Conference/Scheduling Conference and to Proceed in Discovery. (ECF Nos. 12, 13.) The Motion for Extension of Time was granted, and the Motion Requesting Pretrial Conference/Scheduling Conference to Proceed in Discovery was denied without prejudice. (ECF No. 16.) At that time,

the Court advised Tyler of his obligations under Federal Rule of Civil Procedure 56(d), requiring that he demonstrate by affidavit or declaration that he cannot present essential facts to his opposition without discovery. (*Id.*) Tyler subsequently filed three more Motions for Extension of Time to oppose Defendants' Motion (ECF Nos. 17, 19, and 21) which were granted (ECF Nos. 20, 22). Additionally, Tyler filed a second Motion Requesting Pretrial Scheduling Conference to Proceed in Discovery. (ECF No. 8.) The second motion to proceed in discovery includes a list of documents and information Tyler seeks, and states that the evidence "will show clearly that there is knowledge defendants have, to dispute their summary judgment argument that they didn't violate clearly established constitutional rights of plaintiff." (*Id.* at 3.) Because the second motion did not comply with Rule 56(d), Tyler was once again advised of the requirements for demonstrating the necessity for discovery prior to summary judgment and provided an opportunity to supplement his discovery motion together with his opposition response to Defendants' Motion. (ECF No. 20.) While his deadline for filing the opposition response and supplement was June 27, 2025, Tyler finally filed an opposition response to Defendants' Motion on July 18, 2025; he did not supplement his Motion to Proceed with Discovery. (ECF No. 26.) Additionally, Tyler filed a Motion to Appoint Counsel and a Motion to Amend the Complaint. (ECF Nos. 23, 24.)

Having reviewed the submitted materials, the Court finds that no hearing is necessary. Local Rule 105.6 (D. Md. 2025). For the reasons set forth below, Defendants' Motion to Dismiss, or, in the Alternative, for Summary Judgment, will be granted. Tyler's Motions to Proceed in Discovery, to Appoint Counsel, and to Amend the Complaint will be denied.

I.    **Background**

A. **Tyler's Complaint**

Tyler alleges that in October of 2020, he sent a thirty-five-dollar money voucher and letter to the RCI Finance-Business Office to be processed and sent to the Circuit Court for Washington County, Maryland in order to seek a judicial review hearing regarding his alleged illegal confinement. (ECF No. 1-1.) Tyler noted that the deadline for filing the case was November 20, 2020. (*Id.*) Tyler states that on November 23, 2020, he contacted the Washington County Circuit Court to inquire about his case and was informed that the filing fee and letter had not been received prior to the November 20, 2020, deadline. (*Id.*) His petition for judicial review was subsequently dismissed on January 6, 2021. (*Id.*) Tyler alleges that Defendants "withheld money from being dispersed out of plaintiff's account effectively denying plaintiff access to the courts" and "failed to timely process plaintiff's money voucher into a check and send it out with his letter in time to meet his filing fee deadline." (*Id.*) When Tyler wrote to the Finance Department to ask them to process and send out the money and letter as soon as possible, he was informed that the "money voucher would be processed and sent out in the first full week of November 2020 after inmate payroll." (*Id.* at 3.) Tyler alleges that inmate payroll was not posted until November 9, 2020, and that his voucher was not processed until November 13, 2020, and only after he filed a grievance regarding the delay. (*Id.*) Tyler contends that "[b]y withholding money from being dispersed out of plaintiff's prison financial account he was effectively denied access to the courts. As this deliberate delay of inmate legal mail resulted in plaintiff's check not being processed for over a month, leading to plaintiff being denied court access." (*Id.* at 4.)

3

### B. Defendants' Response

Defendants filed a motion seeking dismissal of the Complaint or, in the alternative, for summary judgment. (ECF No. 10.) They contend that the Complaint should be dismissed because: (1) Tyler's claims are barred by the applicable statute of limitations; (2) claims against the state and its employees in their official capacities are barred by the Eleventh Amendment;[1] (3) Tyler fails to allege sufficient personal involvement on behalf of the individual defendants; (4) defendants are entitled to qualified immunity; and (5) Tyler fails to state a claim upon which relief can be granted. Defendants submitted a copy of the Inmate Grievance Office's ("IGO") dismissal of Tyler's grievance regarding the calculation of his sentence (ECF No. 10-3) as well as copies of documents filed in his state petition for judicial review (ECF Nos. 10-4 through 10-9).

### II.    Standard of Review

Defendants' dispositive motion is styled as a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) or, in the alternative, for summary judgment under Federal Rule of Civil Procedure 56. To survive a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6), the factual allegations of a complaint "must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations omitted). "To satisfy this standard, a plaintiff need not 'forecast' evidence sufficient to prove the elements of the claim. However, the complaint must allege sufficient facts to establish those elements." *Walters v. McMahen*, 684 F.3d 435, 439 (4th Cir. 2012) (citation omitted).

---

[1] Tyler filed a Motion to Amend the Complaint, stating that he intended to sue the individual Defendants in their official and individual capacities. (ECF No. 24.) The Court liberally construed the Complaint as such, and Defendants have included responses to the Complaint both in their individual and official capacities. Thus, the amendment requested is not necessary, and the Motion to Amend shall denied.

Ordinarily, a court "is not to consider matters outside the pleadings or resolve factual disputes when ruling on a motion to dismiss." *Bosiger v. U.S. Airways*, 510 F.3d 442, 450 (4th Cir. 2007). However, a court, in its discretion, may consider matters outside of the pleadings, pursuant to Rule 12(d). *See Kensington Volunteer Fire Dep't, Inc. v. Montgomery Cnty.*, 788 F. Supp. 2d 431, 436–37 (D. Md. 2011), *aff'd sub nom. Kensington Volunteer Fire Dep't, Inc. v. Montgomery Cnty.*, 684 F.3d 462 (4th Cir. 2012). If the court does so, "the motion must be treated as one for summary judgment under Rule 56," and "[a]ll parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." Fed. R. Civ. P. 12(d); *see Adams Hous., LLC v. City of Salisbury, Maryland*, 672 F. App'x 220, 222 (4th Cir. 2016) (per curiam).

The Fourth Circuit has articulated two requirements for proper conversion of a Rule 12(b)(6) motion to a Rule 56 motion: notice and a reasonable opportunity for discovery. *See Greater Baltimore Ctr. for Pregnancy Concerns, Inc. v. Mayor & City Council of Baltimore*, 721 F.3d 264, 281 (4th Cir. 2013). When the movant expressly captions its motion as one for summary judgment "in the alternative" and submits matters outside the pleadings for the court's consideration, the parties are deemed to be on notice that conversion under Rule 12(d) may occur; the court "does not have an obligation to notify parties of the obvious." *Laughlin v. Metro. Washington Airports Auth.*, 149 F.3d 253, 261 (4th Cir. 1998). Tyler was provided such notice and filed an opposition response with exhibits.

Summary judgment is generally inappropriate "where the parties have not had an opportunity for reasonable discovery." *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 448–49 (4th Cir. 2011); *see Shaw v. Foreman*, 59 F.4th 121 (4th Cir. 2023); *Putney v. Likin*, 656 F. App'x 632, 638-39 (4th Cir. July 14, 2016) (per curiam); *McCray v. Maryland Dep't*

*of Transp., Maryland Transit Admin.*, 741 F.3d 480, 483 (4th Cir. 2014). However, "the party opposing summary judgment 'cannot complain that summary judgment was granted without discovery unless that party had made an attempt to oppose the motion on the grounds that more time was needed for discovery.'" *Harrods Ltd. v. Sixty Internet Domain Names*, 302 F.3d 214, 244 (4th Cir. 2002) (quoting *Evans v. Techs. Applications & Serv. Co.*, 80 F.3d 954, 961 (4th Cir. 1996)).

To raise adequately the issue that discovery is needed, the nonmovant typically must file an affidavit or declaration pursuant to Rule 56(d) (formerly Rule 56(f)), explaining why, "for specified reasons, it cannot present facts essential to justify its opposition," without needed discovery. *See Shaw v. Foreman*, 59 F.4th 121 (4th Cir. 2023); *Pledger v. Lynch*, 5 F.4th 511, 526 (4th Cir. 2021); *Harrods Ltd.*, 302 F.3d at 244–45 (discussing affidavit requirement of former Rule 56(f)).

"[T]o justify a denial of summary judgment on the grounds that additional discovery is necessary, the facts identified in a Rule 56 affidavit must be 'essential to [the] opposition.'" *Scott v. Nuvell Fin. Servs., LLC,* 789 F. Supp. 2d 637, 641 (D. Md. 2011) (alteration in original) (citation omitted), *rev'd on other grounds sub nom. Gardner v. Ally Fin., Inc.*, 514 Fed. App'x 378 (4th Cir. 2013) (per curiam). A nonmoving party's Rule 56(d) request for additional discovery is properly denied "where the additional evidence sought for discovery would not have by itself created a genuine issue of material fact sufficient to defeat summary judgment." *Strag v. Bd. of Trs., Craven Cmty. Coll.*, 55 F.3d 943, 954 (4th Cir. 1995); *see McClure v. Ports*, 914 F.3d 866, 874-75 (4th Cir. 2019); *Gordon v. CIGNA Corp.*, 890 F.3d 463, 479 (4th Cir. 2018); *Amirmokri v. Abraham*, 437 F. Supp. 2d 414, 420 (D. Md. 2006), *aff'd*, 266 F. App'x. 274 (4th Cir. 2008), *cert. denied*, 555 U.S. 885 (2008).

If a nonmoving party believes that further discovery is necessary before consideration of summary judgment, the party who fails to file a Rule 56(d) affidavit acts at his peril, because "the failure to file an affidavit . . . is itself sufficient grounds to reject a claim that the opportunity for discovery was inadequate." *Harrods Ltd.*, 302 F.3d at 244 (citations and quotations omitted). But, the nonmoving party's failure to file a Rule 56(d) affidavit cannot obligate a court to issue a summary judgment ruling that is obviously premature. And, a court "should hesitate before denying a Rule 56(d) motion when the nonmovant seeks necessary information possessed only by the movant." *Pisano v. Strach*, 743 F.3d 927, 931 (4th Cir. 2014).

Although the Fourth Circuit has placed "'great weight'" on the Rule 56(d) affidavit, and has said that a mere "'reference to Rule 56(f) [now Rule 56(d)] and the need for additional discovery in a memorandum of law in opposition to a motion for summary judgment is not an adequate substitute for [an] affidavit,'" the appellate court has "not always insisted" on a Rule 56(d) affidavit. *Harrods Ltd.*, 302 F.3d at 244 (internal citations omitted). Failure to file an affidavit may be excused "if the nonmoving party has adequately informed the district court that the motion is pre-mature and that more discovery is necessary" and the "nonmoving party's objections before the district court 'served as the functional equivalent of an affidavit.'" *Id.* at 244-45 (internal citations omitted); *see also Putney*, 656 F. App'x at 638; *Nader v. Blair*, 549 F.3d 953, 961 (4th Cir. 2008). Moreover, "[t]his is especially true where, as here, the non-moving party is proceeding pro se." *Putney*, 656 F. App'x at 638.

While Tyler has repeatedly requested discovery, he has not presented any reason why the information sought is necessary to the disposition of Defendants' Motion nor has he filed an affidavit compliant with Rule 56(d) notwithstanding being provided specific instructions regarding how to do so. Additionally, Tyler has responded in opposition to Defendants' Motion and

submitted documents in support of his opposition. (ECF No. 26.) Thus, conversion of Defendants'
motion to one for summary judgment is appropriate, and this Court will consider the exhibits filed
where necessary for disposition of the motion.

Rule 56(a) provides that summary judgment should be granted "if the movant shows that
there is no *genuine* dispute as to any *material* fact and the movant is entitled to judgment as a
matter of law." Fed. R. Civ. P. 56(a) (emphases added). "A dispute is genuine if 'a reasonable
jury could return a verdict for the nonmoving party.'" *Libertarian Party of Virginia v. Judd*, 718
F.3d 308, 313 (4th Cir. 2013) (quoting *Dulaney v. Packaging Corp. of Am.*, 673 F.3d 323, 330 (4th
Cir. 2012)). "A fact is material if it 'might affect the outcome of the suit under the governing
law.'" *Id.* (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). Accordingly, "the
mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise
properly supported motion for summary judgment[.]" *Anderson*, 477 U.S. at 247–48 (emphasis in
original). "A party opposing a properly supported motion for summary judgment 'may not rest
upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts
showing that there is a genuine issue for trial.'" *Bouchat v. Baltimore Ravens Football Club, Inc.*,
346 F.3d 514, 525 (4th Cir. 2003) (alteration in original) (quoting Fed. R. Civ. P. 56(e)), *cert.
denied*, 541 U.S. 1042 (2004).

The court must view the evidence in the light most favorable to the nonmoving party, *Tolan
v. Cotton*, 572 U.S. 650, 656-57 (2014) (per curiam) (citation and quotation omitted), and draw all
reasonable inferences in that party's favor, *Scott v. Harris*, 550 U.S. 372, 378 (2007) (citations
omitted); *see also Jacobs v. N.C. Admin. Off. of the Cts.*, 780 F.3d 562, 568–69 (4th Cir. 2015).
Because plaintiff is self-represented, his submissions are liberally construed. *See Erickson v.
Pardus*, 551 U.S. 89, 94 (2007). At the same time, the court must "prevent factually unsupported

8

claims and defenses from proceeding to trial." *Bouchat*, 346 F.3d at 526 (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778–79 (4th Cir. 1993)).

### III.    Analysis

#### A. Official Capacity Claims

With respect to the official capacity claims asserted here, "§ 1983 claims are never cognizable against states, state agencies, or state agents acting in their official capacities, regardless whether the defendant state has waived Eleventh Amendment immunity." *Dyer v. Maryland State Bd. of Educ.*, 187 F. Supp. 3d 599, 611 (D. Md. 2016), *aff'd*, 685 F. App'x 261 (4th Cir. 2017).

#### B. Personal Participation and Supervisory Liability

Defendants contend that Tyler fails to allege their personal participation in the events described in the Complaint. (ECF No. 10-2 at 7–8.) Liability under § 1983 attaches only upon personal participation by a defendant in a constitutional violation, and it is well established that the doctrine of respondeat superior does not apply in § 1983 claims. *See Love-Lane v. Martin*, 355 F.3d 766, 782 (4th Cir. 2004). Liability of supervisory officials "is not based on ordinary principles of respondeat superior, but rather is premised on 'a recognition that supervisory indifference or tacit authorization of subordinates' misconduct may be a causative factor in the constitutional injuries they inflict on those committed to their care.'" *Baynard v. Malone*, 268 F.3d 228, 235 (4th Cir. 2001) (quoting *Slakan v. Porter*, 737 F.2d 368, 372 (4th Cir. 1984)). Supervisory liability under § 1983 must be supported with allegations that: (1) the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury to citizens like the plaintiff; (2) the supervisor's response to the knowledge was so inadequate as to show deliberate indifference to or tacit authorization of the

9

alleged offensive practices; and (3) there was an affirmative causal link between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff. *See Shaw v. Stroud*, 13 F.3d 791, 799 (4th Cir. 1994).

### 1. Defendant Casey Campbell

As to Defendant Casey Campbell, Tyler only alleges that he, as Warden of RCI, "allowed RCI Finance-Business Office Director to deliberately fail to process plaintiff[']s money voucher" and, in violation of prison policy, "allowed prison officials to withhold sending out plaintiff's outgoing legal mail for over a month." (ECF No. 1-1 at 5.) Tyler does not allege that Warden Campbell was personally involved with his mail and money voucher requests, had any actual or constructive knowledge of the alleged issues with his mail and money vouchers, or that the Finance-Business Office Director was mishandling them. As such, Tyler fails to state a claim against Warden Campbell and the Complaint against him will be dismissed.

### 2. Defendants Robert Green and Wayne Hill

Tyler alleges that when he "notified the Commissioner of Correction Wayne Hill of this violation through the prison's administrative remedy grievance process the Commissioner failed to issue a remedy to correct the problem." (ECF No. 1-1 at 5.) However, denial of a plaintiff's grievance and appeals does not alone impose liability. *McKelvey v. Spence*, Civ. No. 23-00146, 2024 WL 3749873, at *5 (S.D.W. Va. June 26, 2024) (collecting cases); *Collins v. Clarke*, Civ. No. 22-00406, 2023 WL 4109773, at *4 (W.D. Va. June 21, 2023) (collecting cases).

Tyler also alleges that Hill, as Commissioner of Correction, is "in charge" of DPSCS facilities and that he is the direct supervisor of the Warden of RCI as well as its Office Management Supervisor and Fiscal Administrator, but he fails to allege that Hill had any actual or constructive knowledge about Tyler's mail and money vouchers or his subordinate's conduct regarding their

10

handling. (ECF No. 1-1 at 5.) As he has alleged neither personal involvement nor supervisory liability on the part of Commissioner Hill, Tyler's claims against him will be dismissed.

Likewise, Tyler fails to allege the personal involvement or supervisory liability of Defendant Robert Green, Secretary of DPSCS, who is only mentioned in the Complaint as holding authority over the Commissioner of Correction. (*Id.*) The claims against Secretary Green will also be dismissed.

### 3. Defendant Stacey Kretzer

Defendant Stacey Kretzer, RCI Finance Business Office Director/Supervisor, argues that Tyler has failed to allege her personal involvement or supervisory liability. (ECF No. 10-2 at 9–10.) Specifically, she states that "[t]here is no evidence that Defendant Kretzer was personally involved with processing the Plaintiff's money voucher." (*Id.* at 10.) However, Tyler alleges that he "submitted [the] money voucher and letter to the RCI Finance-Business Office," "consistently wrote the Finance Department informing them of his upcoming filing deadline and to process and send out this money voucher and letter as soon as possible," and that "the Finance-Office informed Plaintiff that his money voucher would be processed and sent out in the first full week of November 2020." (ECF No. 1-1 at 3.) Because Tyler does not specify whether the "Finance-Business Office" he wrote to and received communications from and Defendant Kretzer are one in the same, the Complaint can be liberally construed to allege that Stacey Kretzer is the person with whom Tyler communicated and who made decisions regarding the timing and processing of his voucher. Accordingly, Tyler's claims cannot be dismissed against her on this basis.

### C. Access to Courts

Prisoners such as Tyler have a constitutionally protected right of access to the courts. *See Bounds v. Smith*, 430 U.S. 817, 821 (1977). However:

11

> *Bounds* does not guarantee inmates the wherewithal to transform themselves into litigating engines capable of filing everything from shareholder derivative actions to slip-and-fall claims. The tools it requires to be provided are those that the inmates need in order to attack their sentences, directly or collaterally, and in order to challenge the conditions of their confinement. Impairment of any other litigating capacity is simply one of the incidental (and perfectly constitutional) consequences of conviction and incarceration.

*Lewis v. Casey*, 518 U.S. 343, 355 (1996).

"Ultimately, a prisoner wishing to establish an unconstitutional burden on his right of access to the courts must show 'actual injury' to 'the capability of bringing contemplated challenges to sentences or conditions of confinement before the courts.'" *O'Dell v. Netherland*, 112 F.3d 773, 776 (4th Cir. 1997) (quoting *Lewis*, 518 U.S. at 355). "The requirement that an inmate alleging a violation of *Bounds* must show actual injury derives ultimately from the doctrine of standing, a constitutional principle that prevents courts of law from undertaking tasks assigned to the political branches." *Lewis*, 518 U.S. at 349. Actual injury occurs when a prisoner demonstrates that a "nonfrivolous" and "arguable" claim was lost because of the denial of access to the courts. *Id.* at 399.

In *Christopher v. Harbury*, 536 U.S. 403, 403 (2002), the Court characterized access-to-the-courts claims as being in one of two categories. *Id.* at 413–14. The first, termed "forward looking claims," are cases where official action frustrates a plaintiff's ability to bring a suit at the present time. *Jennings v. City of Stillwater*, 383 F.3d 1199, 1208-09 (10th Cir. 2004). The second class, termed "backward looking claims," arise when a plaintiff alleges that a specific claim "cannot be tried (or tried with all the evidence) [because past official action] caused the loss or inadequate settlement of a meritorious case." *Id.* at 1208. In this way, the official action is said to have "'rendered hollow [the plaintiff's] right to seek redress' "in the courts. *Id.* (quoting *Christopher*, 536 U.S. at 415 (brackets in original) (internal citations omitted)).

12

Whether the claim is forward or backward looking, a prisoner claiming he was denied access to the courts must ultimately prove he suffered an actual injury by showing that the defendant's acts hindered his ability to pursue a nonfrivolous legal claim. Conclusory allegations are not sufficient in this regard. *See Wardell v. Duncan*, 470 F.3d 954, 959 (10th Cir. 2006) (denying access to court claim based on allegation that petition for a writ of certiorari had, for unspecified reasons, been dismissed and where plaintiff did not even mention the point on appeal). The right of access to the courts is "ancillary to the underlying claim, without which a plaintiff cannot have suffered injury by being shut out of court." *Christopher*, 536 U.S. at 415.

Here, Tyler alleges that in October of 2020, he submitted a voucher request and letter to be processed and sent to the Circuit Court for Washington County in time to be filed by a November 20, 2020, deadline. (ECF No. 1-1 at 3.) He alleges that he wrote to the Finance Office explaining the deadline and inquiring as to the timing of the processing of his voucher. He was assured that the voucher would be processed in the first week of November 2020, which should have been plenty of time for the payment and letter to reach the Washington County court prior to the deadline. Tyler asserts that, having submitted the voucher in October and having written to the Finance Office "multiple times" to explain the time-sensitivity of the voucher and inquire about its status, the failure to timely process the voucher was deliberate. Tyler alleges that his petition for judicial review regarding his "illegal confinement" was dismissed as untimely due to Defendants' deliberate failure to process his money voucher in time. (ECF No. 1-1.)

Defendants agree that the petition was dismissed because the fee was not timely paid. (ECF No. 10-2 at 2.) However, the evidence and court records show otherwise. Tyler filed a grievance with the IGO, which was dismissed on June 25, 2020. (ECF No. 10-3.) Per Maryland Rules, Tyler's petition for judicial review of the IGO decision was required to be filed within 30 days of

the later of: 1) the date of the order; 2) the date the order was sent to the petitioner; or 3) the date

the petitioner received notice of the order. *See* Md. R. Cir. Ct. 7-203. According to the Maryland

Judiciary Case Search, Tyler filed his petition for judicial review on September 14, 2020, together

with a request for prepayment waiver. *In re: DaQuan Tyler*, Case. No. C-21-CV-20-000368 (Cir.

Ct. Wash. Cnty.), https://casesearch.courts.state.md.us/casesearch/ (last visited July 21, 2025). On

September 21, 2020, Tyler's request for waiver of prepayment costs was partially granted, and he

was provided 60 days in which to pay the $35 filing fee. *Id.*; (*see also* ECF No. 1-3.) The circuit

court's order indicated that the petition was "accepted but not processed," until which time the

filing fee was paid. (*Id.*) On November 30, 2020, the circuit court issued a Notice to

Administrative Agency of Judicial Review to the IGO, stating that a petition for judicial review

was filed on November 14, 2020. (ECF No. 10-4.) On January 5, 2021, the circuit court, upon

consideration of the respondent's motion to dismiss, dismissed the petition as untimely. (ECF No.

10-5.)

Careful review of this timeline makes clear that Tyler's petition was not dismissed as

untimely due to a failure to submit the $35 filing fee within 60 days of the circuit court's September

21, 2020 order. First, the docket indicates that the petition for judicial review was filed on

September 14, 2020, far more than 30 days past the June 25, 2020, issuance of the IGO decision.

Second, the records reflect that the petition for judicial review was filed on November 14, 2020,

indicating that the $35 filing fee was received and processed on that date or before, which is

comfortably within Tyler's sixty-day deadline for payment. That Tyler was told his payment was

not yet processed when he contacted the court on November 23, 2020, does not negate the fact that

the payment was apparently received and the petition processed on November 14, 2020. As the

filing fee appears to have been timely paid, it seems that the dismissal of the petition as untimely

14

was based on its filing date on September 14, 2020, which was significantly outside the thirty-day window following the IGO's decision. Therefore, even if Tyler's money voucher had been processed during the first week of November 2020 as he was told it would be, his petition for judicial review would still have been dismissed as untimely. As such, Tyler did not suffer any actual harm based on the delayed processing of his voucher and mail, and the remaining defendant, Stacey Kretzer, is entitled to summary judgment in her favor.[2]

### IV.    Conclusion

For the foregoing reasons, Defendants' Motion, construed as a motion to dismiss as to Defendants Campbell, Green, Hill, and the State of Maryland, is granted. Defendants' Motion, construed as one for summary judgment as to Defendant Stacey Kretzer, is granted. The Complaint will be dismissed as to Defendants Campbell, Green, Hill, and the State of Maryland and judgment entered in favor of Defendant Kretzer and against Tyler. Tyler's Motions to Proceed in Discovery, for Appointment of Counsel, and for Leave to File an Amended Complaint will be denied.

A separate Order follows.

Dated this ___4___ day of ___Sept___, 2025.

FOR THE COURT:

_James K. Bredar_
James K. Bredar
United States District Judge

---

[2] Defendants' arguments regarding the statute of limitations and qualified immunity need not be addressed as their motion is being granted on other grounds.

15